15 MAG 0171                                    ORIGINAL

Approved: _____
          DREW JOHNSON-SKINNER
          Assistant United States Attorney

Before:   HONORABLE FRANK MAAS
          Chief United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :   COMPLAINT
UNITED STATES OF AMERICA          :
                                  :   Violation of
          - v. -                  :   21 U.S.C. § 846
                                  :
BEY DOMINICK,                     :   COUNTY OF OFFENSE:
                                  :   BRONX
          Defendant.              :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          PATRICK J. SHIPMAN, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations, Department of Homeland Security ("HSI-DHS"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

          1.   From in or about October 2013 to in or about January 20, 2015, in the Southern District of New York and elsewhere, BEY DOMINICK, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy that BEY DOMINICK, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

3.   The controlled substance that BEY DOMINICK, the defendant, conspired to distribute and possess with intent to distribute was a quantity of mixtures and substances containing a detectable amount of Ethylone, which is an isomer of Butylone, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

4.   I am a Special Agent with HSI-DHS. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.   Based on my involvement in this investigation and my conversations with other law enforcement officers, I have learned, among other things, the following:

   a.   On or about October 21, 2014, officers with United States Customs and Border Protection ("CBP") notified HSI-DHS officers that they had intercepted and seized a parcel at John F. Kennedy International Airport in Queens, New York, that originated from Shanghai, China ("Prior Parcel-1"). Law enforcement officers weighed and tested the contents of Prior Parcel-1 and determined that it contained approximately one kilogram of a substance that tested positive for Ethylone in initial CBP laboratory tests.[1] Prior Parcel-1 was addressed to "Fisher Scientific Inc., 610 Broadway #347, Newburgh, NY 12550."

   b.   A UPS retail shipping, postal, printing and business store is located at 610 Broadway, Newburgh, New York 12550 ("UPS Store-1").

---

[1] Ethylone is an isomer of Butylone, a Schedule I controlled substance. The substance contained in Prior Parcel-1 is currently undergoing additional laboratory tests to confirm the presence of Ethylone.

c.        In or about October 2014, HSI-DHS officers interviewed the owner of UPS Store-1 regarding mailbox #347 ("Box #347").

d.        In the course of interviewing the owner of UPS Store-1 and reviewing documents in the custody or control of UPS Store-1, HSI-DHS officers learned, in sum and substance, that on or about October 11, 2014, a mailbox service agreement was entered into by UPS Store-1 and an individual using the name "Ali K. Smith" for Box #347.

e.        "Ali K. Smith" provided two forms of identification to UPS Store-1 to open Box #347: (a) a New York State driver's license bearing the name "Ali K. Smith," license number 786 870 842, an address of "2311 Southern Blvd., Bronx, NY 10460," and a date of birth of May 21, 1971; and (b) a Binghamton University identification card bearing the name "Ali K. Smith" and a date of birth of May 21, 1971.

f.        "Ali K. Smith" requested that UPS Store-1 notify him upon the arrival of all shipments directed to Box #347. "Ali K. Smith" provided to UPS Store-1, among other things, the cellular telephone number 347-954-3101 at which number he could be notified of shipments to Box #347.

g.        HSI-DHS officers have reviewed records regarding international money transfers maintained by Western Union. The records indicate, among other things, that an individual using the name "Dominick Beq" and the cellular telephone number 347-954-3101—the same telephone number provided by "Ali K. Smith" for notifications of shipments to Box #347— sent wire transfers from the United States to banks in China. The individual sending wire transfers provided Western Union with a name and address of "Dominick Beq, 86 Woodlake Drive, Middletown, NY 10940." The records also indicate that an individual using the name "Bey Dominick" and the address "86 Woodlake Drive, Middletown, NY 10940" sent wire transfers via Western Union from the United States to banks in China. Additionally, the records indicate that an individual using the name "Ali Smith" and the address "2311 Southern Blvd., Bronx, NY 10460" sent wire transfers from the United States to banks in China. Specifically, from in or about October 2013 to in or about August 2014, the individual or individuals using the names "Dominick Beq," "Bey Dominick," and "Ali Smith," sent approximately 14 wire transfers totaling approximately $29,300 from the United States to banks in China. Certain of those wire transfers were made through a Western Union agent located in the Bronx, New York.

3

    h.  Public database inquiries revealed that BEY DOMINICK, the defendant, with a date of birth of June 8, 1971, resides at 86 Woodlake Drive, Middletown, New York 10940.

    i.  Law enforcement database inquiries revealed that DOMINICK is employed as a police officer with the Triborough Bridge and Tunnel Authority ("TBTA"), which is part of the Metropolitan Transportation Authority ("MTA").

    6.  On or about November 17, 2014, HSI-DHS officers interviewed a New York State Department of Motor Vehicles ("DMV") investigator, who stated, in substance and in part, that the New York State driver's license used by "Ali K. Smith" to open Box #347 was fraudulent and does not exist in the New York DMV system.

    7.  Based on my involvement in this investigation and my conversations with other law enforcement officers, I have learned, among other things, that:

    a.  HSI-DHS officers obtained a copy of an application submitted by BEY DOMINICK, the defendant, for a United States Passport that was issued in DOMINICK's name on or about February 29, 2008.

    b.  DOMINICK's United States Passport application provided the name of DOMINICK's mother.

    c.  Public database inquiries reveal that the address 2311 Southern Boulevard, Bronx, New York 10460—which was listed on the New York State driver's license provided by "Ali K. Smith" to open Box #347 and used by the individual using the name "Ali Smith" to send Western Union transfers to China—was a previous address for DOMINICK's mother.

    d.  I have reviewed the photograph on the driver's license used by "Ali K. Smith" to open Box #347 and the photograph on DOMINICK's Passport application. The photographs appear to be of the same person.

    8.  On or about November 13, 2014, HSI-DHS officers interviewed an employee at UPS Store-1, who told law enforcement, in substance and in part, that a second parcel had been delivered to Box #347 ("Prior Parcel-2") in or about October 2014. The employee stated further that Prior Parcel-2 had been signed for and picked up by an "Ali Smith" on or about October 30, 2014. The employee was shown a photograph of BEY DOMINICK, the defendant, and identified the person in the

photograph as the person who picked up and signed for Prior Parcel-2.

9. On or about January 16, 2015, HSI-DHS officers interviewed the manager of a UPS retail shipping, postal, printing and business store located at 367 Windsor Highway, New Windsor, NY 12553 ("UPS Store-2"). Based on that interview and a review of documents in the custody and control of UPS Store-2, I have learned, among other things, the following:

   a. The manager of UPS Store-2 told law enforcement officers, in substance and in part, that on or about January 10, 2014, a mailbox service agreement was entered into by UPS Store-2 and an individual using the name "Ali Smith" for mailbox #501 ("Box #501").

   b. The manager of UPS Store-2 provided HSI-DHS officers with a copy of two identification cards used by "Ali Smith" to open Box #501, which were identical to the identification cards used by "Ali K. Smith" to open Box #347 at UPS Store-1.

   c. The manager of UPS Store-2 provided HSI-DHS officers with a copy of the mailbox service agreement entered into with "Ali Smith" for Box #501. On the agreement, "Ali Smith" provided a "firm or corporation name" of "Chempack Industries, 2311 Southern Boulevard, Bronx, NY 10460"—the same street and city provided on the New York State driver's licenses used to open Box #347 at UPS Store-1 and Box #501 at UPS Store-2, and the address previously associated with the mother of BEY DOMINICK, the defendant. Additionally, "Ali Smith" provided a cellular telephone number of "347-954-3101"—the same phone number provided by "Ali K. Smith" for notifications of shipments to Box #347 at UPS Store-1.

   d. The manager of UPS Store-2 provided HSI-DHS officers with a copy of the store's "package receiving report" for Box #501. The report provides that from on or about January 30, 2014, to on or about December 13, 2014, Box #501 received 24 parcels, 17 of which were associated with United States Postal Service ("USPS") tracking numbers indicating that the parcels originated in China.

10. On or about January 16, 2015, the manager of UPS Store-2 contacted HSI-DHS officers and stated, in substance and in part, that she had spoken with an employee of UPS Store-2 who had received that same day a telephone call from "Ali Smith" inquiring about whether a parcel had arrived for his box and

5

indicating that he would renew the rental of his mailbox at UPS Store-2.

11.     The manager of UPS Store-2 further stated to law enforcement officers, in substance and in part, that according to UPS Store-2's caller identification system, the telephone number "Ali Smith" had called from on or about January 16, 2015, to inquire about whether a parcel had arrived for his box was 347-954-3101, the same number associated with Box #347 at UPS Store-1.

12.     On or about January 16, 2015, law enforcement officers searched postal databases for parcels currently in transit associated with "Chempack Industries"—the business name provided by "Ali Smith" in connection with Box #501 at UPS Store-2.

13.     On or about January 16, 2015, law enforcement officers located a package addressed to "Chempack Industries, 367 Windsor Highway #501, New Windsor, NY 12553" and bearing a USPS Express Mail tracking number (the "Subject Parcel"). The Subject Parcel was then at a mail processing and distribution center located in Newburgh, New York. Records associated with the Subject Parcel indicated that it had originated in China. The Subject Parcel was removed from the normal mail stream at the request of law enforcement.

14.     I have reviewed the database for companies in New York State on the New York State Department of State, Division of Corporations, Web site and learned, among other things:

    a.      There is no listing for "Chempack Industries." Public database inquiries revealed that there is no business entity "Chempack Industries" associated with the addresses "367 Windsor Highway #501, New Windsor, NY 12553" or "2311 Southern Boulevard, Bronx, NY 10460."

    b.      There is no listing for the business entity "Fisher Scientific Inc.," although there is a listing for a "Fisher Scientific Company L.L.C.," among other similar listings. Public database inquiries revealed that there is no business entity "Fisher Scientific Inc." or any similar name associated with the address "610 Broadway #347, Newburgh, NY 12550."

15.     On or about January 19, 2015, HSI-DHS officers obtained a judicially authorized search warrant to search the

Subject Parcel for controlled substances or analogues, among other things (the "Search Warrant").

16. On or about January 19, 2015, upon searching the Subject Parcel pursuant to the Search Warrant, HSI-DHS officers found that it contained approximately one kilogram of a substance that tested positive for Ethylone in laboratory tests. HSI-DHS officers removed the Ethylone from the Subject Parcel and re-sealed the package.

17. On or about January 20, 2015, law enforcement officers delivered the Subject Parcel to UPS Store-2. At approximately 10:00 a.m. on or about January 20, 2015, UPS Store-2 employees notified the individual using the name "Ali Smith" that the Subject Parcel was available for pick-up.

18. On or about January 20, 2015, law enforcement officers, including myself, conducted surveillance outside and inside of UPS Store-2. Based on that surveillance and conversations with a UPS Store-2 employee, I have learned, in substance and in part, the following:

   a. At approximately 1:00 p.m. on or about January 20, 2015, an individual later identified as BEY DOMINICK, the defendant, entered UPS Store-2.

   b. DOMINICK opened Box #501 and removed a mailbox renewal notice that had been placed in Box #501. DOMINICK then approached the UPS Store-2 counter. DOMINICK paid a UPS Store-2 employee in cash to renew Box #501 in the name "Ali Smith" for three additional months. The UPS Store-2 employee then asked DOMINICK to sign for the Subject Parcel. DOMINICK signed "Ali Smith" on a receipt and accepted the Subject Parcel.

   c. DOMINICK exited UPS Store-2 in possession of the Subject Parcel.

   d. Upon exiting UPS Store-2 with the Subject Parcel, DOMINICK was arrested by law enforcement officers.

   e. At the time of his arrest, DOMINICK had in his possession, among other things, a New York State driver's license in the name "Bey Dominick," as well as a MTA police identification card and badge. DOMINICK also possessed a firearm containing ammunition.

19. Based on my training and experience, including my involvement in prior investigations and my discussions of prior investigations and trafficking intelligence with other law enforcement officers, I have learned that express mail parcels have become a method of choice by dealers of narcotics for the transportation of narcotics. I have also learned that international express mail parcels containing Ethylone and similar substances intended for delivery in the New York area often originate from specific source locations, including China.

WHEREFORE, deponent prays that BEY DOMINICK, the defendant, be imprisoned or bailed, as the case may be.

PATRICK J. SHIPMAN
Special Agent
Homeland Security Investigations,
United States Department of
 Homeland Security

Sworn to before me this
21st day of January, 2015

HONORABLE FRANK MAAS
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8